UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:25CR00530 JMD |
| | ) | |
| BRIDGETTE JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant Bridgette Johnson, represented by defense counsel Donnell Smith, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This plea agreement does not, and is not intended to, bind any governmental office or agency other than the Office of the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this plea agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count One of the Information, the United States agrees that no further federal prosecution will be brought against the defendant in this District relative to the conduct described in the Information, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that the Government will not recommend a sentence above the low-end of the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a), and that the defendant may recommend whatever sentence she deems appropriate. The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document. The parties understand that the Court shall not be bound by either party's recommendation.

The defendant also agrees, pursuant to the guilty plea to Count One the Information, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including, but not limited to, a money judgment in an amount equal to the amount of restitution imposed by the Court.

**3. ELEMENTS:**

As to Count One of the Information, which charges the defendant with wire fraud, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant voluntarily and intentionally devised a scheme to defraud another out of money or property, or to obtain money or property by means of material false representations or promises;

*Two*, the defendant did so with the intent to defraud; and

*Three*, the defendant used, or caused to be used, an interstate wire communication in furtherance of, or in an attempt to carry out, some essential step in the scheme.

2

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

### A.    The CARES Act

The Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") is a federal law that was enacted in or around March 2020. The CARES Act was designed to, among other things, provide emergency financial assistance to small business owners in all U.S. states, Washington D.C., and territories affected by the COVID-19 pandemic. The CARES Act established a new loan program known as the Paycheck Protection Program (the "PPP"), which authorized fully forgivable loans to eligible small businesses that needed financial assistance to stay in operation and keep their workers employed during the COVID-19 pandemic. The CARES Act also made certain changes to the United States Small Business Administration's (the "SBA") preexisting Economic Injury Disaster Loan ("EIDL") program. Based on these changes, more small businesses were eligible to receive COVID-19 EIDL loans, which were repayable loans with borrower-friendly terms available to small businesses that were financially unable to pay their ordinary and necessary operating expenses due to the COVID-19 pandemic.

### B.    PPP Loans

While the PPP was administered by the SBA, PPP loans were approved and funded by third-party lenders that participated in the PPP, with one such lender being Justine Petersen Housing and Reinvestment Corporation ("JPHRC"), which is headquartered in St. Louis, Missouri, within the Eastern District of Missouri. To obtain a PPP loan, a qualifying business had to submit, or cause to be submitted, a PPP loan application signed by an authorized representative

3

of the business.  In the application, the business, through its authorized representative, was required to, among other things, acknowledge the program rules and certify that the loan funds would be used only for certain authorized business-related purposes, such as to retain workers and maintain payroll.  As part of the application, the business, through its authorized representative, was also required to provide documentation showing its payroll expenses, such as federal tax documents that had been filed with the IRS.

The business's completed application was processed by the participating lender to which it was submitted.  In the course of processing the loan, the lender electronically transmitted data from the application, including information supplied by the business's authorized representative, the total amount of the loan, and the listed number of employees, to the SBA through the SBA's servers located in Virginia or Oregon.  If the application was approved, the participating lender funded the loan with its own money by making an electronic funds transfer to a financial account designated by the borrower's authorized representative.  To encourage lenders to participate in the PPP and fund PPP loans, the SBA fully guaranteed the loans.  Generally, this meant that, if the borrower defaulted on repaying the loan, the SBA would purchase the borrower's debt from the lender and take on the responsibility of repaying the loan.

Under applicable PPP rules and guidance, the borrower could seek to have the principal and interest owed on the loan fully forgiven by electronically submitting a forgiveness application.  In the forgiveness application, the borrower, through its authorized representative, was required to certify that the borrower had complied with all requirements of the PPP, the PPP interim final rules, and SBA guidance, including, but not limited to, rules related to the "eligible uses of PPP loan proceeds" and the "amount of PPP loan proceeds that must be used for payroll costs."  If the forgiveness application was approved by the participating lender, such that the loan was fully

forgiven, then the SBA repaid the principal and interest owed on the loan to the lender, which resulted in the borrower owing nothing and being completely relieved of its obligation to repay the lender.

### C.    COVID-19 EIDL Loans

Like the PPP, the COVID-19 EIDL program was administered by the SBA. But unlike PPP loans, which were issued by participating lenders, COVID-19 EIDL loans were issued directly by the SBA and were not eligible for forgiveness.

To obtain a COVID-19 EIDL loan, a qualifying business had to electronically submit, or cause to be electronically submitted, an EIDL loan application signed by an authorized representative of the business. In the EIDL loan application, the business, through its authorized representative, was required to, among other things, provide information about the business's operations, including, but not limited to, the business's number of employees as of January 31, 2020, the business's gross revenues for the 12 months prior to January 31, 2020, and the business's cost of goods sold for the 12 months prior to January 31, 2020. The applicant was also required to certify, under penalty of perjury, that all information contained in, and submitted with, the application was "true and correct."

Prior to April 2021, an applicant was eligible to receive a COVID-19 EIDL loan up to an amount equal to 50% (1/2) of the applicant's gross profit (*i.e.*, gross revenues minus cost of goods sold) for the 12 months prior to January 31, 2020. Beginning in April 2021, an applicant was eligible to receive a COVID-19 EIDL loan up to an amount equal to two times (2x) the applicant's gross profit for the 12 months prior to January 31, 2020. Additionally, after an EIDL loan application was submitted, and before a decision whether to approve or deny the application was

5

made, the applicant could also request and receive up to $15,000 in advance payments from the SBA, which did not have to be repaid.

**D.    The Defendant's Conduct**

Between in or around March 2020 and in or around August 2021, in the Eastern District of Missouri and elsewhere, the defendant, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud JPHRC and the SBA, and to obtain COVID-19 loan money from JPHRC and the SBA by means of materially false and fraudulent pretenses, representations, and promises, that is, by submitting fraudulent applications for PPP loans and EIDL loans and advances.

### *1.    The Defendant's Businesses*

The defendant registered numerous businesses in the state of Missouri under her name, including Compassion at Home, LLC ("Compassion at Home"), Pinkandposh, LLC ("Pinkandposh"), Platinum Cee Transport, LLC ("Platinum Cee"), Platinum Protection Services Group, LLC ("Platinum Protection"), and Tiffany's Touch Adult Daycare LLC ("Tiffany's Touch"). The defendant controlled, and was the sole signatory for, Bank of America checking accounts in the names of those businesses, including an account ending in -x1249 in the name of Compassion at Home, an account ending in -x0978 in the name of Platinum Cee, and an account ending in -x0506 in the name of Platinum Protection.

### *2.    Fraudulent PPP Loan and Forgiveness Applications*

On or about July 8, 2020, the defendant submitted to JPHRC, or caused to be submitted to JPHRC, a fraudulent PPP loan application on behalf of her business, Compassion at Home. In the application, the defendant, acting as the authorized representative of Compassion at Home, falsely represented, among other things, that Compassion at Home had an average monthly payroll of

6

$60,000 and that Compassion at Home would use the loan proceeds "to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments as specified under the Paycheck Protection Program Rule[.]" To support the false representation regarding Compassion at Home's average monthly payroll, the defendant submitted, or caused to be submitted, with the application fabricated federal tax documents for Compassion at Home that were falsely designed to appear as if they had been filed with the IRS. In truth and in fact, as the defendant well knew, Compassion at Home's average monthly payroll was virtually nothing at that time, and the fabricated federal tax documents had not been filed with the IRS and contained false information that substantially overstated Compassion at Home's actual payroll costs. Based on the defendant's false representations in Compassion at Home's fraudulent PPP loan application, as well as her submission of the fabricated federal tax documents, JPHRC approved Compassion at Home's PPP loan. As a result, on or about August 5, 2020, JPHRC electronically transferred $120,000 to the Bank of America checking account ending in -x1249 in the name of Compassion at Home.

On or about March 29, 2021, the defendant electronically submitted to JPHRC, or caused to be electronically submitted to JPHRC, a fraudulent PPP loan forgiveness application. In that application, the defendant, acting as the authorized representative of Compassion at Home, falsely represented, among other things, that Compassion at Home had complied with all requirements of the PPP, the PPP interim final rules, and SBA guidance, including, but not limited to, rules related to the "eligible uses of PPP loan proceeds" and the "amount of PPP loan proceeds that must be used for payroll costs." More specifically, the defendant falsely represented that Compassion at Home had spent all $120,000 in loan proceeds from its PPP loan on payroll costs. In truth and in fact, as the defendant well knew, she spent nearly all of the loan proceeds for unauthorized, non-

7

payroll purposes, including by making tens of thousands of dollars' worth of personal cash withdrawals. After the defendant submitted, or caused to be submitted, the fraudulent forgiveness application, and based upon the false representations made in the application, JPHRC approved the application, which absolved Compassion at Home of any obligation to repay the $120,000 in PPP loan proceeds that the defendant fraudulently obtained and used for unauthorized purposes.

### 3.      *Fraudulent COVID-19 EIDL Loan Applications*

Between in or around March 2020 and in or around August 2021, the defendant electronically submitted to the SBA, or caused to be electronically submitted to the SBA, at least eight fraudulent COVID-19 EIDL loan applications. In each of those applications, the defendant falsely overstated the number of employees that she and her businesses had as of January 31, 2020, as well as the amount of gross profit (gross revenues minus cost of goods sold) that she and her businesses had generated in the 12 months prior to January 31, 2020, all in an effort increase the loan and advance amounts for which she and her businesses were eligible. In truth and in fact, the defendant fabricated those figures and well knew that she and her businesses had far fewer employees (in some instances none) and substantially less (if any) gross profit than she represented in the applications. In total, through the fraudulent applications, the defendant attempted to fraudulently obtain more than $1,000,000 in COVID-19 EIDL loans from the SBA, as follows:

| Application Date | Application Number | Business Name | Falsely Represented Number of Employees | Falsely Represented Gross Profit | Eligible Loan Amount Based on False Representations |
|---|---|---|---|---|---|
| 03/30/2020 | 3300449489 | Compassion at Home | 5 | $82,173 | $41,000 |
| 03/30/2020 | 3300439535 | Pinkandposh | 1 | $118,372 | $59,000 |
| 03/31/2020 | 3300779273 | Platinum Cee | 2 | $85,239 | $42,500 |
| 03/31/2020 | 3300953335 | Platinum Protection | 2 | $6,063 | $3,000 |
| 06/25/2020 | 3306464543 | Platinum Cee | 3 | $178,000 | $89,000 |
| 07/08/2020 | 3309502863 | Bridgette Johnson | 14 | $86,620 | $43,000 |
| 07/29/2021 | 3322863283 | Bridgette Johnson | 15 | $127,000 | $254,000 |
| 08/03/2021 | 3323323488 | Tiffany's Touch | 10 | $275,000 | $550,000 |
| **TOTAL** | | | | | **$1,081,500** |

Based on the defendant's false representations regarding the number of employees in the applications that she submitted in the name of Compassion at Home, Platinum Cee, and Platinum Protection, the SBA approved advance payments for those businesses. As a result, between on or about April 21, 2020 and on or about April 22, 2020, the SBA caused a total of $9,000 ($1,000 for each purported employee) to be electronically transferred to three of the defendant's Bank of America checking accounts, specifically $5,000 to the checking account ending in -x1249 in the name of Compassion at Home, $2,000 to the checking account ending in -x0978 in the name of Platinum Cee, and $2,000 to the checking account ending in -x0506 in the name of Platinum Protection.

### 4.    *Wire Transmission*

On or about July 30, 2020, for the purpose of executing the above-described scheme and artifice to defraud, and with the intent to defraud, the defendant used, or caused to be used, an interstate wire transmission in furtherance of, or in an attempt to carry out, some essential step in the scheme, to wit, a fraudulent PPP loan application seeking a loan in the amount of $120,000 that was submitted by means of an interstate wire communication from JPHRC located within the Eastern District of Missouri to SBA servers located outside the state of Missouri.

9

In total, through her scheme and artifice to defraud, the defendant intended to cause a loss $1,201,500 ($120,000 for the fraudulent PPP loan and $1,081,500 for the fraudulent COVID-19 EIDL loans) and caused an actual loss of $129,000 ($120,000 in PPP loan funds actually obtained and $9,000 in COVID-19 EIDL loan funds actually obtained).

**5. STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Count One of the Information is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine.  The Court may also impose a period of supervised release of not more than 3 years.

**6. U.S. SENTENCING GUIDELINES (2024 MANUAL):**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

    a. **Chapter 2 Offense Conduct:**

        **(1) Base Offense Level:**  The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

        **(2)**   **Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 14 levels should be added pursuant to Section 2B1.1(b)(1)(H) because the intended loss exceeds $550,000 but does not exceed $1,500,000.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(12) because the offense involved conduct described in 18 U.S.C. § 1040.

**b. Chapter 3 and 4 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that 3 levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If, subsequent to the taking of the guilty plea, the Government receives new evidence of statements or conduct by the defendant that it believes are inconsistent with the defendant's eligibility for this deduction, the Government may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) Adjustment for Certain Zero-Point Offenders:** If the Court determines that the defendant does not receive any criminal history points from Chapter 4, Part A, then the parties agree that 2 levels should be deducted pursuant to Section 4C1.1(a), because the defendant meets all of the criteria under Section 4C1.1(a)(2) through (a)(10).

**(3) Other Adjustments:** The parties have no further agreement regarding any other adjustments.

**c. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 20, unless a 2-level deduction under Section 4C1.1(a) applies based on the Court's determination of the defendant's criminal history. If the presentence investigation report determines a different Total Offense Level, the parties are permitted to object to or accept any enhancements or

11

reductions in the presentence investigation report that are not specifically set forth in the plea agreement.

      **d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

      **e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

      **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

      **(1) Non-Sentencing Issues:** The parties agree to waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, and the guilty plea.

      **(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the plea agreement; (2) calculation of the

12

defendant's Criminal History Category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

    **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    **a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

    **b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the defendant.

    **c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime that the defendant committed. These conditions will be restrictions on the defendant to which the

13

defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d.  Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.  Possibility of Detention:**  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.  Fines, Restitution and Costs of Incarceration and Supervision:**  The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration, and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the Information who suffered an actual loss.

**g.  Forfeiture:**  The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation,

14

whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon her interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in an amount equal to the amount of restitution imposed by the Court. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including, but not limited to, that the defendant was not given adequate notice of forfeiture in the charging instrument.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands, and hereby waives her rights, including, but not limited to: the right to plead not guilty to the charges; the right to be tried

15

by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence; and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel and, if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur, and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact the defendant's immigration status or result in deportation. In particular, if any crime to which the defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed

mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the guilty plea.

**10.  VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case.  In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11.  CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if the defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete, or untruthful information to the United States Probation Office, or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this plea agreement.  The Government may also, in its discretion, proceed with this plea agreement and may advocate for any sentencing position supported by the facts, including, but not limited to, obstruction of justice and denial of acceptance of responsibility.

17

## 12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this plea agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

10-10-25
_____
Date

_____
JUSTIN M. LADENDORF
Assistant United States Attorney

_____
10/10/25
Date

_____
BRIDGETTE JOHNSON
Defendant

10/10/25
_____
Date

_____
DONNELL SMITH
Attorney for Defendant

18